

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-16-1996

# United States v. Roberson

Precedential or Non-Precedential:

Docket 95-1827

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"United States v. Roberson" (1996). *1996 Decisions.* Paper 101.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/101

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES OF AMERICA

v.

LESTER ROBERSON,
                          Appellant
_____

Appeal from the United States District Court
For the Eastern District of Pennsylvania
D.C. Crim. No. 94-00069-01
_____

Argued:  May 15, 1996
BEFORE: BECKER, NYGAARD, AND LEWIS, Circuit Judges

(Filed: July 16, 1996)

Michael R. Stiles, Esquire
Walter S. Batty, Jr., Esquire
Nancy B. Winter, Esquire
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA   19106

Nina A. Pala, Esquire (ARGUED)
Office of United States Attorney
Chemical Bank Plaza, Suite 1100
1201 Market Street
P.O. Box 2046
Wilmington, DE   19899-2046

Counsel for Appellee

Elizabeth Hey, Esquire (ARGUED)
Robert Epstein, Esquire
Elaine DeMasse, Esquire
Maureen Kearney Rowley, Esquire
Defender Association of Philadelphia
Federal Court Division
437 Chestnut Street
Lafayette Building, Suite 800
Philadelphia, PA   19106-2414

Counsel for Appellant

_____

OPINION OF THE COURT
_____

BECKER, Circuit Judge.

          This appeal from a criminal conviction challenges the
district court's denial of the defendant's motion to suppress
physical evidence seized by the police.  The question we must
decide is whether an anonymous tip that contains only information
readily observable at the time the tip is made may supply
reasonable suspicion for a Terry stop in the absence of police
observations of any suspicious conduct.  We conclude that it may
not.  We will therefore reverse the judgment of the district
court.

I.

          On the evening of September 29, 1994, a Philadelphia
Police Department 911 operator received an anonymous call stating
that a heavy-set, black male wearing dark green pants, a white
hooded sweatshirt, and a brown leather jacket was selling drugs
on the 2100 block of Chelten Avenue.  The 911 operator had no
information as to the reliability of the caller or the source of
this information.

          At approximately 7:18 p.m., the informer's tip was
relayed over the police radio.  Officers Steven Nathan and Steven
Hellmuth, who were patrolling in a marked police Ford Bronco,
responded.  About thirty to forty seconds after receiving the
call, they arrived at the 2100 block of Chelten and saw a man
meeting the tipster's description standing on the corner.
According to the police officers, that corner was a known "hot
spot" where drugs were sold to passing motorists.  Officer Nathan
and the man, later to be identified as the defendant, Lester
Roberson, made eye contact.  According to Nathan, the defendant
then walked "casually" over to a car parked facing the wrong way
on Chelten Avenue and leaned in as if to speak with the vehicle's
occupants.  The police observed no indicia of drug activity.

          At this point, the officers exited their Bronco, with
guns drawn, and ordered the defendant away from the parked car.
As they approached him, they observed the butt of a gun
protruding from his pants.  They patted him down, and seized from
his person a 9mm semi-automatic pistol with 13 rounds of
ammunition, two plastic bags containing numerous packets of
cocaine, a pill bottle containing 47 valium pills, a half-full
bottle of cough syrup, and $319 in U.S. currency.  The defendant
was placed under arrest, and was subsequently indicted for
possession of a firearm by a convicted felon in violation of 18
U.S.C.   922(g)(1).

          Defendant moved to suppress the evidence seized by the
police.  He argued that the officers did not have reasonable
suspicion that he was involved in criminal activity and that
their stop was, therefore, in violation of the Fourth Amendment
under Terry v. Ohio, 392 U.S. 1 (1968).  The government countered

that Officers Nathan and Hellmuth saw Roberson's gun before exiting their vehicle. Because possession of a firearm is a crime, the officers had, in the government's submission, probable cause for an arrest, and, a fortiori, reasonable suspicion for a Terry stop.

After an evidentiary hearing, the district court rejected the government's contention, finding that the officers did not observe the "defendant's gun [until] some time after they exited their vehicle with their weapons in hand," and therefore that they did not have probable cause for the seizure. United States v. Roberson, No. 95-69, slip op. at 4 (E.D. Pa. May 17, 1995). However, according to the court, lack of probable cause was not fatal to the government's case because the officers' conduct in leaving their vehicle with their guns drawn was not an arrest for which probable cause was necessary. Id. at 4-6. These aspects of the district court's ruling are not challenged on appeal.

The district court turned next to the Terry issue and reasoned that the officers' arrival on the scene "less than one minute after receiving the radio dispatch" and their identification of the "defendant as a clear match to the radio call's detailed description of the suspect" constituted reasonable suspicion for their stop. Id. at 6-7. The court also noted that "the eye contact that occurred between the defendant and the officers and the defendant's interaction with the people in the car" bolstered the officers' suspicion. Id. at 7. It thus denied defendant's motion to suppress the evidence. The case proceeded to a jury trial and, after conviction, the defendant was sentenced to 240 months in jail. The principal question presented on appeal is the propriety of the district court's suppression ruling. Although its factual findings must be reviewed for clear error, we review the district court's finding of reasonable suspicion de novo. See Ornelas v. United States, 116 S.Ct. 1657, 1662-63 (1996).

## II.
### A.

In Terry, the Supreme Court held that law enforcement officers have the authority under the Fourth Amendment to stop and temporarily detain citizens short of an arrest, and that such a stop is justified by less than the probable cause necessary for an arrest. 392 U.S. at 25-27. Under Terry, a police officer may detain and investigate citizens when he or she has a reasonable suspicion that "criminal activity may be afoot." Id. at 30. In this case, we must determine whether officers Nathan and Hellmuth had such reasonable suspicion.

There is a well developed Supreme Court jurisprudence as to whether an informant's tip can provide either probable cause for an arrest or reasonable suspicion for a Terry stop. The Supreme Court initially set forth a two-pronged approach for determining whether an informant's tip established probable cause. See Spinelli v. United States, 393 U.S. 411, 416 (1969); Aguilar v. Texas, 378 U.S. 108, 114 (1964). Under those cases, to be credible, an informant's tip had to indicate both the basis

for the informant's knowledge as well as facts sufficient to establish his veracity or reliability.

In Illinois v. Gates, 462 U.S. 213 (1983), the Court, again dealing with probable cause, abandoned this two-pronged test in favor of a totality of the circumstances approach for evaluating an anonymous tip. It wrote:

> Moreover, the "two-pronged test" directs analysis into two largely independent channels -- the informant's "veracity" or "reliability" and his "basis of knowledge." There are persuasive arguments against according these two elements such independent status. Instead, they are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

Id. at 233. (citations omitted). In Alabama v. White, 496 U.S. 325 (1990), the Court adopted the totality of the circumstances test to determine whether an anonymous tip could provide reasonable suspicion for a Terry stop. In concluding that the Gates tip provided probable cause and the White tip provided reasonable suspicion, the Court stressed two factors: (1) an officer's ability to corroborate significant aspects of the tip, and (2) the tip's ability to predict future events.

Returning to Gates, there the Bloomingdale Police Department had received an anonymous letter stating that Lance and Sue Gates were Illinois drug dealers and that Mrs. Gates would drive the family car to Florida on May 3, leave the car to be loaded with drugs, and fly home. Several days later, according to the letter, Mr. Gates would fly to Florida and drive the car -- now packed with over $100,000 worth of drugs -- home to Bloomingdale. The letter also represented that the Gateses had over $100,000 worth of drugs in their basement. Id. at 225. An Illinois detective learned that Mr. Gates had made a reservation to fly to Florida on May 5. Id. at 225-26. The Drug Enforcement Administration set up surveillance and observed Mr. Gates deplane in West Palm Beach, go to a hotel room registered to his wife, leave that room the next morning with an unidentified woman, enter a car with Illinois license plates registered to him, and drive back to Illinois. Id. at 226.

The detective signed an affidavit setting forth these facts and submitted it, together with the anonymous letter, to the local court. The magistrate determined that there was probable cause and issued a search warrant for the Gateses' residence and automobile. Id. The Illinois Supreme Court found that no probable cause existed, but the U.S. Supreme Court reversed.

First, according to the Court, the facts obtained from the investigation, standing alone, suggested that the Gateses

were involved in drug trafficking.  Florida is a well-known drug source, and Gates' quick overnight stay was suggestive of a drug run.  Id. at 243.  Second, investigators were able to verify numerous details including that the Gateses' car would be in Florida, that Lance Gates would fly to Florida in the next day or so, and that he would drive the car back towards Illinois.  Id. at 244.  Stressing the value of corroboration, the court concluded that because the informant had been right about these facts, his other assertions about illegal activity were also probably true.  Id.  Furthermore, the letter "contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted."  Id. at 245.  Emphasizing the insider quality of predictive information, the Court concluded that if the informant "had access to accurate information of this type, a magistrate could properly concluded that it was not unlikely that he also had access to reliable information of the Gateses' alleged illegal activities."  Id.

        Building on Gates in Alabama v. White, 496 U.S. 325 (1990), the Court considered whether an anonymous informant's tip would provide reasonable suspicion for a Terry stop -- the situation present in this case.  In that case, the Montgomery police department received an anonymous telephone call at 3:00 p.m. that:

> Vanessa White would be leaving 235-C Lynwood
> Terrace Apartments at a particular time in a
> brown Plymouth station wagon with the right
> taillight lens broken, that she would be
> going to Dobey's Motel, and that she would be
> in possession of about an ounce of cocaine
> inside a brown attache case.

Id. at 327.  The police set up surveillance outside the Lynwood Terrace Apartments.  They saw a brown Plymouth station wagon with a broken taillight and observed a woman leave the 235 building empty-handed and enter the station wagon.  The officers followed the vehicle as it drove the most direct route to Dobey's Motel.  When the car reached the Highway on which the motel was located, the police stopped the vehicle (at approximately 4:18 p.m.), and White granted them permission to search the car for cocaine.  Discovering marijuana in a brown attache case in the car, they placed White under arrest.  At the police station, the officers found cocaine in White's purse.  Id.

        The Alabama Court of Criminal Appeals held that the officers did not have reasonable suspicion under Terry, and reversed her conviction.  The U.S. Supreme Court reversed.  Id. at 328.  The Court applied the totality of the circumstances approach of Gates, and concluded that it must review both the quantity and quality of information provided by the tip.  Id. at 330.  In doing so, the Court emphasized that, in the Terrycontext, this information need only give rise to a lower level of suspicion.  Id. ("'We have held that probable cause means "a fair probability that contraband or evidence of a crime will be found," and the level of suspicion required for a Terry stop is

obviously less demanding than for probable cause.'") (citingUnited States v. Sokolow, 490 U.S. 1 (1989)) (citations omitted).

The Court went on to hold that while "[t]he tip was not as detailed, and the corroboration was not as complete, as in Gates," the tip provided appropriate grounds for the stop because the "required degree of suspicion was likewise not as high."  Id. at 329, 332.  Importantly, the officers were able to corroborate numerous details supplied by the tipster; namely that a woman left the 235 building, got into the car described by the caller, traveled the most direct route to the motel, and that this all happened in the time frame predicted by the informant.  Id. at 331.  Referencing Gates, the Court concluded that because the tipster had been right about these things, "he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity."  Id. at 331–32.

As in Gates, the Court placed great emphasis on the tip's predictive value.  It wrote:

> We think it also important that, as in Gates, "the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." The fact that the officers found a car precisely matching the caller's description in front of the 235 building is an example of the former.  Anyone could have "predicted" that fact because it was a condition presumably existing at the time of the call. What was important was the caller's ability to predict respondent's future behavior, because it demonstrated inside information –– a special familiarity with the respondent's affairs. . . . Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities.

Id. at 332.  (citations omitted) (emphasis added).  Thus, the court concluded that while it was a "close call," this predictive anonymous tip, as corroborated, "exhibited sufficient indicia of reliability to justify the investigatory stop of [White's] car." Id. (emphasis added).

### B.

Against this legal landscape, we must determine whether the anonymous tip indicating that a heavy-set, black man wearing green pants, a brown leather jacket, and a white hooded sweatshirt was selling drugs on the 2100 block of Chelten Avenue –– together with the subsequent observations by officers Nathan and Hellmuth –– provided reasonable suspicion under Alabama v. White for an investigative stop.  We conclude that it does not.

As we have noted, in assessing reasonable suspicion for a stop pursuant to an anonymous tip, Alabama v. White stressed corroboration and predictiveness. In the instant situation, it is no doubt true that the officers were able to corroborate most of the tipster's information. But to use the Court's language, "Anyone could have 'predicted'" the facts contained in the tip because they were "condition[s] presumably existing at the time of the call." Alabama v. White, 496 U.S. at 332. Indeed, the caller could have been looking out his window at a heavy-set black man in green pants, brown leather jacket, and white hooded sweat shirt at the time of his 911 call.

By contrast, the tipster in Illinois v. Gates indicated that on a certain date Mrs. Gates would drive the family car to Florida, that Mr. Gates would fly to Florida several days thereafter, meet the car, and drive it back to Illinois. 462 U.S. at 225. This type of information is not readily known or observable to members of the public. Likewise, in Alabama v. White, the informant predicted that White would shortly leave a particular building, enter a described car, and drive a certain route. 496 U.S. at 327. Because the tipster had accurate information about Ms. White's upcoming itinerary, details not known to the general public, it was reasonable for the officers to conclude that the tipster had accurate information about Ms. White's illegal activities. Id. at 332.

The tip in the case at bar contained no "details of future actions of third parties ordinarily not easily predicted." Alabama v. White, 496 U.S. 325, 332 (1990) (quoting Illinois v. Gates, 462 U.S. 213, 245 (1983)). Thus, no future actions could be corroborated, and an important basis for forming reasonable suspicion was absent. Moreover, because they were dealing with an anonymous and bare-bones tip, the police had no basis for assessing either the reliability of the informant or the grounds on which the informant believed that a crime was being committed -- the two Aguilar/Spinelli prongs, which were not abandoned in Illinois v. Gates but were made important ingredients in the "totality." See Illinois v. Gates, 462 U.S. at 232-233.

These omissions probably would not have invalidated the stop, if, after corroborating readily observable facts, the police officers had noticed unusual or suspicious conduct on Roberson's part. But they did not. Cf. United States v. Clipper, 973 F.2d 944, 949 (D.C. Cir. 1992) ("While it is true that the Court said, in [Alabama v. White], that the police's ability to corroborate the informant's predictions was important, Alabama v. White does not establish a categorical rule conditioning a Terry stop (when police are acting on an anonymous tip) on the corroboration of predictive information."), cert. denied, 506 U.S. 1070 (1993). After their arrival on Chelten Avenue, the police first saw the defendant standing on the corner, and they then observed him walk to a car parked across the street and lean in as if to talk to the vehicle's occupant(s). None of this was unusual. Officer Nathan testified that it was normal for residents of that neighborhood to stand on the corner. App. at 51a ("[T]he information that we received was he was on the corner, which was no great big deal, because guess

what that's where everybody hangs up there is on the corner.").

Furthermore, defendant's walk to the car did not indicate that he was about to engage in drug transactions. First, according to Nathan's own testimony, the defendant walked "casually" to the car -- behavior that does not indicate criminal activity. Second, as the government admits in its brief, because the defendant had already seen the marked police car, it would be "highly unlikely that he would engage in drug transactions at that moment." Brief at 9. Indeed, common sense indicates that the vehicle's occupants were not likely to purchase drugs from the defendant at that time. According to the Government, drugs are purchased on Chelten Avenue by passing motorists, who drive to "hot corners," make their purchases, and drive quickly away. The car the defendant approached was parked across the street from the defendant, facing the wrong way, a posture inconsistent with a quick exit and the alleged style of drug transactions in this neighborhood.

All that the Government is left with then is the fact that the defendant was apprehended on a "hot corner." This is not enough. The 2100 block of Chelten Avenue is a residential neighborhood. We simply cannot accept the Government's position that any resident of (or visitor to) that neighborhood who, without otherwise engendering suspicion, is unlucky enough to be the subject of a non-predictive anonymous tip, is subject to a Terry stop simply because the neighborhood is known for narcotics sales. Even Alabama v. White was referred to by the Supreme Court as a "close call," 496 U.S. at 332. The circumstances of this case are far less compelling.

Refusing to stretch Alabama v. White any further, we hold that the police do not have reasonable suspicion for an investigative stop when, as here, they receive a fleshless anonymous tip of drug-dealing that provides only readily observable information, and they themselves observe no suspicious behavior. To hold otherwise would work too great an intrusion on the Fourth Amendment liberties, for any citizen could be subject to police detention pursuant to an anonymous phone call describing his or her present location and appearance and representing that he or she was selling drugs. Indeed anyone of us could face significant intrusion on the say-so of an anonymous prankster, rival, or misinformed individual. This, we believe, would be unreasonable.

We note that the government was not powerless to act on the non-predictive, anonymous tip they received. The officers could have set up surveillance of the defendant. See United States v. Clipper, 973 F.2d at 951 ("If there is any doubt about the reliability of an anonymous tip in [a drug case], the police can limit their response to surveillance or engage in 'controlled buys.'"). If the officers then observed any suspicious behavior or if they had observed suspicious behavior as they approached the defendant in this case, they would have had appropriate cause to stop -- and perhaps even arrest -- him. This, however, they did not do. In the absence of any observations of suspicious conduct or the corroboration of information from which the police

could reasonably conclude that the anonymous tipster's allegation of criminal activity was reliable, we must conclude that there was no reasonable suspicion to stop the defendant.

                              III.
          For the reasons stated above, the judgment of the district court will be reversed.