## UNITED STATES of America,

v.

## Mitchell ROBERTSON.

## No. CRIM.A. 99–484.

United States District Court,
E.D. Pennsylvania.

Jan. 28, 2000.

Def. Assoc. Philadelphia, PA, for Defendant.

Carol A. Sweeney, U.S. Atty's Office, Philadelphia, PA, for U.S.

### *MEMORANDUM*

LUDWIG, District Judge.

On April 29, 1999 defendant Mitchell Robertson was arrested by a Philadelphia police officer and later was indicted for possession of ammunition by a convicted felon, 18 U.S.C. § 922(g)(1).[1] He moved to suppress the seizure of the handgun containing the ammunition. On December 6, 1999, upon hearing, the motion was denied. Defendant changed his plea to guilty, reserving the right to appeal the suppression ruling. *See United States v. Zudick*, 523 F.2d 848, 851 (3d Cir.1975).

### *Findings of Fact* [2]

On April 29, 1999, at 12:10 p.m., while on duty, Captain Joseph Sullivan of the Phila-

---

1. The handgun was a Spanish "break-open" revolver, the date of manufacture of which could not be established. Since the statute prohibits possession of handguns manufactured in and after 1898, the prosecution proceeded with the ammunition count, which has no chronological limitation. 18 U.S.C. §§ 921(a)(16) & (a)(17).

2. The evidence consisted of the testimony of the government's four witnesses—Captain Joseph Sullivan, Officer Peter Gronczewski, Officer Edward Fidler, Police Radio Dispatcher Walter Blichasz, and Officer Danny Allen—together with defendant's witness, Correctional Officer Dorothy Harris. All of the testimony was found to be credible and substantially worth of belief. Tr. at 107.

delphia Police Department responded to a radio call that officers were in foot pursuit of two male robbery suspects, at least one of whom was armed, in the area of 18th Street and 66th Avenue. Tr. at 107. A second radio report described the men as black, one wearing a white shirt and reddish pants, the other, a white or gray shirt and blue jeans. *Id.* at 107–08. After approaching the scene of the robbery and getting out of his car, Sullivan briefly saw two men running east on 66th street. *Id.* at 9, 10, 107. Believing that they fit the descriptions given, he instructed his driver to follow them. *Id.* at 108.

At first, Sullivan lost sight of the men, but a motorist came by and informed him that the men he was looking for had boarded a SEPTA bus that was several blocks away on 66th street but still visible. *Id.* Sullivan chased after the bus, stopped and boarded it. *Id.* At the rear seat of the bus, in which there were 12–15 passengers, Sullivan saw two men who he thought corresponded to the descriptions of the robbery suspects.[3] *Id.*

When Sullivan made eye contact with defendant, the latter removed an item from his waistband, reached over the passenger seated next to him and placed it behind the seat in front and to his right— on top of the wheel well. *Id.* at 109. In the officer's opinion, based on his experience, defendant was trying to rid himself of a concealed weapon. *Id.* Sullivan drew his revolver, ordered defendant to lie on the floor—and a search of the wheel well area disclosed a loaded handgun. *Id.*

Two other police officers who were present also testified that, when arrested on the bus, defendant was wearing blue or dark jeans and a gray or dirty white shirt with black lettering on the front. *Id.* at 54, 90, 112–13. Corroborating Sullivan further, these witnesses said defendant was not wearing a jacket. *Id.* at 56, 90, 113. These descriptions are in contrast

with defendant's police headquarters photograph, which shows him wearing a black T-shirt and a jacket. *Id.* at 112–13. Also, his prison receipt lists a black T-shirt, black jeans, and a multi-colored jacket. *Id.* at 85. Other than the lapse of time, this clothing discrepancy was not explained in the testimony. *Id.* at 113.

### *Discussion*

Whether a police pat-down and search of the adjacent area are permissible under the Fourth Amendment is governed by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). As articulated in that decision:

> [T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

> \*     \*     \*     \*     \*     \*

> The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.

---

**3.** According to Sullivan, defendant was sitting in the rear seat to Sullivan's left and was wearing a grayish shirt with black pants. Tr.

at 108–09. The other man was to his right. *Id.*

*Terry,* 392 U.S. at 27–29, 88 S.Ct. at 1883–84.

Defendant questions whether the stopping of the bus was warranted under *Terry,* conceding that if it was a valid stop what occurred thereafter was lawful. Pointing to the disparity between his police photograph and prison receipt and the clothing description given by the police dispatcher, defendant contends that the officer did not have reasonable, articulable suspicion to stop him or, in turn, to stop the bus. His argument is that he could not have been the person who was the subject of the radio dispatch, given his attire when he was photographed and, later, was admitted to prison. In effect, he disputes the credibility of Sullivan and other officers as to what he was wearing when they observed him.

The validity of the seizure of the handgun hinges on whether the stopping of the bus and the confrontation with defendant came within *Terry*'s parameters. The question turns on whether Sullivan had reason to believe that the two men who had gotten on the bus were the robbery suspects. "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than a preponderance of evidence, the Fourth Amendment requires at least a minimal level of justification for making the stop." *Illinois v. Wardlow,* —— U.S. ——, 120 S.Ct. 673, 675, 145 L.Ed.2d 570 (2000), *citing United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Also, the determination of "reasonable suspicion must be based on commonsense judgments and inferences about behavior." *Wardlow,* —— U.S. ——, 120 S.Ct. 673, 676, 145 L.Ed.2d 570, *citing United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

Here, under the facts as adjudicated, the two men seen running[4] in the immediate vicinity of the robbery within minutes thereafter appeared to conform with the descriptions broadcast by police radio.[5] Subsequently, Sullivan had no reason to disbelieve the information given by the motorist that the same men had boarded the SEPTA bus that was observable in the distance. Under the pressing circumstances, this information in itself constituted an important element of reasonable suspicion. *Cf. United States v. Roberson,* 90 F.3d 75, 77 (3d Cir.1996) (an informant's tip that is predictive and corroborated can by itself furnish reasonable suspicion for a *Terry* stop.). Acting on the premise that the two persons who had just committed armed robbery were now passengers on the bus, it was lawful for Sullivan to stop and enter the vehicle. At that point, it was also reasonable for him to believe that one if not both of the men had a weapon.[6] Under *Terry,* he was empowered to conduct a limited search to protect himself as

---

**4.** There is no evidence that the two men were fleeing from the police. Nevertheless, flight in general can constitute grounds for reasonable suspicion. *See Wardlow,* —— U.S. ——, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 ("Headlong flight—wherever it occurs—is the consummate act of evasion; it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.")

**5.** While a dispute may exist as to defendant's attire upon arrest, it is unrebutted that the second of the two men, also seated in the back of the bus, was wearing a white T-shirt with red or cranberry colored pants, as originally reported. Tr. at 14. Also, the time interval between defendant's arrest and police processing is unclear, and no direct evidence

was offered to contest the police officers' descriptions of his clothing, which were generally consistent with the radio dispatch.

**6.** That the two men were not later identified as perpetrators of the robbery does not affect the validity of the stop. As recently discussed:

In allowing such detentions, *Terry* accepts the risk that officers may stop innocent people. Indeed, the Fourth Amendment accepts that risk in connection with more drastic police action; persons arrested and detained on probable cause to believe they have committed a crime may turn out to be innocent.

See *Wardlow,* —— U.S. ——, 120 S.Ct. 673, 676, 145 L.Ed.2d 570.

**582**

well as the other bus passengers. However, before he could search his person, defendant, upon looking at the officer, tried to hide the handgun to avoid its detection. Given the movements described by Sullivan, it was reasonable for him to conclude that protective action needed to occur at once. In these circumstances, his taking gun-drawn control of defendant and causing the search that resulted in the discovery of the handgun was fully justified.[7]

The motion to suppress was denied for these reasons.

---

7. The issue is not reached whether police who stop and enter a public bus without reasonable suspicion may properly seize criminal evidence that, as a result, has been abandoned by a passenger.