

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-30-2003

# USA v. Holmes

Precedential or Non-Precedential: Non-Precedential

Docket 02-3241

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Holmes" (2003). *2003 Decisions.* Paper 521.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/521

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3241

UNITED STATES OF AMERICA

v.

MARQUIS HOLMES,
Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 01-cr-00041E)
District Judge:  Honorable Sean J. McLaughlin

Argued May 13, 2003
Before:  RENDELL, SMITH and ALDISERT, Circuit Judges.

(Filed May 30, 2003)

Karen S. Gerlach, Esq.   [ARGUED]
Office of Federal Public Defender
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, PA  15222
    *Counsel for Appellant*

Bonnie R. Schlueter, Esq.
Michael L. Ivory, Esq.
Christine A. Sanner, Esq.   [ARGUED]
Office of U.S. Attorney
633 U.S. Post Office & Courthouse
Pittsburgh, PA  15219
    *Counsel for Appellee*

RENDELL, Circuit Judge.

Following his conditional guilty plea on a charge of possession with the intent to deliver crack cocaine, Marquis Holmes appeals from the District Court's denial of his Motion to Suppress. The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. We will affirm.

As we write solely for the parties, we need not detail the factual background of this appeal. Holmes argues that the police were without probable cause to arrest him, and thus that the evidence obtained pursuant to that arrest should have been suppressed. In response, the government primarily contends that the actions of the police did not rise to the level of an arrest, but instead merely constituted a stop valid under cases such as Terry v. Ohio, 392 U.S. 1 (1968). Alternatively, the government maintains that even if Holmes was immediately arrested, there was plenty of evidence to establish probable cause.

In reviewing a suppression order, we review the district court's findings of fact for clear error and conclusions of law de novo. See, e.g., United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002). We construe the record in the light most favorable to the government, but "refrain from drawing inferences that are either not supported by the record, or contrary to it, in an effort to uphold an arrest." Id.

We agree that the police officers' actions here were clearly supported by probable

cause. Probable cause is not a rigid or fixed standard. Instead, it is a "fluid concept," a common sense determination evaluated carefully on each unique set of facts. Illinois v. Gates, 462 U.S. 213, 232 (1983); United States v. Burton, 288 F.3d 91, 98 (3d Cir. 2002). It requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity." Gates, 462 U.S. at 243 n.13. For cases, like the one here, involving warrantless arrests, we have recently stated the standard as follows:

> Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested. . . . "[T]he determination that probable cause exists for a warrantless arrest is fundamentally a factual analysis that must be performed by the officers at the scene. It is the function of the court to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed."

Myers, 308 F.3d at 255 (quoting United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984)); see also Beck v. Ohio, 379 U.S. 89, 96 (1964). Although "probable cause must ultimately be decided by the courts, not the police," Myers, 308 F.3d at 255, we must take care to "remember that police officers may well 'draw inferences and make deductions . . . that might well elude an untrained person.'" Id. (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)).

Contrary to Holmes's attempted characterization, this was not simply a case of the police unjustifiably relying on an untrustworthy informant; indeed, the record is replete with evidence from which the police could have reasonably concluded that Holmes was likely engaged in criminal activity. First, the police had the statements of the confidential informant, whose tips had proven reliable in the past. She stated that a large black man, who was being driven around by a car salesman named Russ, had sold her crack in the apartment of a man named Gino. Second, the police had the statements of McDeavitt (also known as Russell Lawrence), which independently corroborated everything the confidential informant had stated: He was a car dealer named Russ who was driving around Holmes – a large black man – and was assisting Holmes in selling crack in the apartment of a man named Gino. This story was echoed by the concerned citizen in the neighborhood, who stated that a large black man had been going to Gino's apartment and that traffic increased in the area when he was there. He also stated that a Brenda Baker was at Gino's frequently, confirming a similar statement of McDeavitt's.

In addition, the police confirmed McDeavitt's statement that Holmes had previous drug and firearms convictions and was presently under supervision. The police also had the benefit of the recorded phone conversation between McDeavitt and Holmes. Although the discussion was not particularly specific or enlightening, it did suggest that the two were indeed participating in some illicit behavior, likely involving drugs. Finally, on the day of the failed buy/bust, McDeavitt showed up with the crack he was supposed

to deliver – presumably from Holmes – in addition to a quantity of crack supposely to be delivered to another of Holmes's customers, an individual who was known by the police to be involved in the Oil City crack traffic. And, when the police arrived at Marini's apartment, McDeavitt, Marini, and Holmes were there, just as McDeavitt had said.

In light of all this evidence, Holmes's challenge to the officers' reliance on McDeavitt's statements is unconvincing. In evaluating the worth of an informant's report, we employ a "totality of the circumstances" approach, considering, among other factors, the informant's veracity, reliability, and basis of knowledge. Gates, 462 U.S. at 230; see also United States v. Roberson, 90 F.3d 75, 77 (3d Cir. 1996). Here, despite the fact that both the guns-for-drugs exchange and buy/bust ultimately failed to occur, the "totality of the circumstances" clearly supports McDeavitt's reliability. His statements were made against his penal interest and from his direct involvement, and many of them were independently corroborated or otherwise turned out to be true. Further, McDeavitt worked with the police extensively and in person, giving the officers ample opportunity to evaluate his trustworthiness, and there is no evidence that any of the officers involved ever doubted his credibility. Little more is necessary under our case law. See, e.g., United States v. Nelson, 284 F.3d 472, 482-84 (3d Cir. 2002); United States v. Valentine, 232 F.3d 350, 353-56 (3d Cir. 2000).

The "reasonably trustworthy information or circumstances within" the officers' knowledge here was certainly "sufficient to warrant a person of reasonable caution to

conclude that an offense ha[d] been committed by" Holmes. Accordingly, we will

AFFIRM.

_____

TO THE CLERK OF COURT:

Please file the foregoing not precedential opinion.

/s/ Marjorie O. Rendell
Circuit Judge