NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No.  09-3527
_____

UNITED STATES OF AMERICA

v.

TODD ALLEN SEWELL,
                              Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No.  08-cr-00090)
District Judge: Honorable Maurice B. Cohill, Junior

_____

Submitted Under Third Circuit LAR 34.1(a)
May 19, 2010

Before: FUENTES, HARDIMAN and NYGAARD, *Circuit Judges*.

(Filed: May 25, 2010 )

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Todd Sewell appeals an order of the District Court denying his motion to suppress evidence following his conditional guilty plea to violating 18 U.S.C. §§ 922(g)(1) and 924(e) (felon in possession of a firearm). We will affirm.[1]

I.

Because we write for the parties, we recount only those facts necessary to our decision. We review the District Court's findings of fact for clear error, and exercise plenary review over its determination that reasonable suspicion justified a *Terry* stop of Sewell. *United States v. Robertson*, 90 F.3d 75, 76-77 (3d Cir. 1996) (citation omitted).

Although the parties dispute some of the facts leading up to the discovery of the gun possessed by Sewell, the following general facts found by the District Court are undisputed. Officer Joyce McClelland, a 20-year veteran of the Pittsburgh Police Department, was on patrol in a marked squad car just past midnight on December 25, 2006. Officer McClelland was on Fifth Avenue in Pittsburgh's Hill District, a high-crime area, when she heard a radio call of shots fired very close by—in the vicinity of the 200 block of Dinwiddie Street. Moments later, McClelland saw Sewell approaching Fifth Avenue on Dinwiddie Street on foot, coming from the direction where the shots reportedly had been fired. Sewell ran or jogged across Fifth Avenue in front of McClelland's car, then slowed to a walk, looked at McClelland's car, and nervously put

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

2

his hands in his pockets. McClelland decided to conduct an investigatory stop of Sewell, which led her to discover the gun in his possession.

Sewell argues that McClelland's observations gave her no reason to suspect he had done anything wrong, rendering the investigatory stop invalid under the Constitution. The Supreme Court has held that "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). To justify a *Terry* stop, police must reasonably suspect not only that a crime has been or is being committed, but also "that the particular individual being stopped is engaged in wrongdoing." *United States v. Cortez*, 449 U.S. 411, 418 (1981). The requisite "level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

In determining whether reasonable suspicion of this type exists, "the totality of the circumstances—the whole picture—must be taken into account." *Cortez*, 449 U.S. at 417. Even a series of lawful acts or occurrences may, taken together, create a reasonable suspicion that a crime is being or has been committed. *Wardlow*, 528 U.S. at 125 (citing *Terry*, 392 U.S. at 5-6, 30). An individual's "nervous, evasive behavior is a pertinent factor," *Wardlow*, 528 U.S. at 124 (citations omitted), as is the time of day at which the encounter occurs, *id.* at 129. Police officers are permitted to "draw on their own

3

experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Cortez*, 449 U.S. at 418).

Here, in the wee hours of Christmas morning, and within moments of hearing a report that gunshots had been fired nearby, Officer McClelland saw Sewell coming from the very locale where the shots had been fired. Sewell hurried across the street in front of McClelland, then slowed to a walk and nervously glanced backward and placed his hands in his pockets. We agree with the District Court that these facts created reasonable suspicion that Sewell had been involved in the reported gunshots.

Our conclusion is guided by our decision in *United States v. Goodrich*, 450 F.3d 552 (3d Cir. 2006). In *Goodrich*, police responded to a citizen's report at 11:20 p.m. that "two people just carrying some kind of buckets or something" were stealing anhydrous ammonia, *id.* at 560, and were "over behind R&M Gas right now loading into some kind of vehicle," *id.* at 562. When police proceeded to the vicinity, they saw one vehicle (Goodrich's) within a block or two of the gas station and stopped it about seven minutes after the report issued. *Id.* at 562-63. We held the stop was supported by reasonable articulable suspicion, citing four key factors: "(1) the reputation of the area in which the stop occurred for criminal activity; (2) the time of day; (3) the geographical and temporal proximity of the stop to the scene of the alleged crime; and (4) the number of persons in the area," *id.* at 561.

4

Like Goodrich, Sewell was stopped late at night in a high-crime area, in close geographical and temporal proximity to a crime. Unlike in *Goodrich*, the District Court made no findings as to the number of other people in the area where Sewell was stopped, and the record evidence is inconclusive on this question. Nevertheless, Officer McClelland was presented with additional indicia of suspicion that were not present in *Goodrich*: she observed Sewell run or jog across the street, away from the scene of the shooting, and then begin acting nervously at roughly the same time he noticed her police car. In addition, McClelland's observation of Sewell was far more proximate in time than the seven minutes that elapsed in *Goodrich*. Accordingly, we hold that the foregoing facts sufficed as a matter of law to justify a *Terry* stop.

Sewell makes much of the fact that Officer McClelland did not have a description of the shooter at the time she stopped him. *Goodrich* demonstrates the unpersuasiveness of this argument. The police in *Goodrich* were initially told only that the suspects were two people with buckets, and they had no description of Goodrich's vehicle or its occupants at the time they initiated the *Terry* stop. Nevertheless, we held that there was reasonable suspicion to stop the vehicle based on the remainder of the circumstances. Sewell cites no case—nor are we aware of one—that stands for the proposition that a physical description of a suspect is a prerequisite to a *Terry* stop. Although Officer McClelland had no description of Sewell, the other factors we have noted provided reasonable articulable suspicion for her to perform an investigatory stop.

For the foregoing reasons, we find no error in the District Court's denial of Sewell's suppression motion and we will affirm his judgment of conviction.