NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2949
_____

UNITED STATES OF AMERICA

v.

LUIS A. SERRANO,
                    Appellant

_____

On Appeal from the District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-12-cr-00452-001)
(District Judge: Honorable Jan E. DuBois)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 15, 2015

Before: HARDIMAN, SCIRICA, and BARRY, <u>Circuit Judges</u>

(Filed: January 16, 2015)

_____

OPINION[*]
_____

SCIRICA, *Circuit Judge.*

    Luis Serrano appeals his conviction and sentence for possessing a firearm as a

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

felon under 18 U.S.C. §§ 922(g)(1) and 924(e). He challenges the denial of his suppression motion and the imposition of § 924(e)(1)'s mandatory fifteen-year minimum sentence. We will affirm.

## I.

### A.[1]

Responding to "numerous calls" of "persons with a gun" in Northeast Philadelphia, Philadelphia Police Sergeant Francis Barclay arrived at a crowded scene where police had already taken into custody a suspect with a gun. Sergeant Barclay and two other officers then stopped a man with a cane, who identified himself as Israel Santiago, because a woman had informed Barclay that a "man with a cane had threatened to come up with a gun." Santiago told Barclay that "he had gotten into an argument at the bar . . . and that when he walked outside a male in a van had showed him a gun and told him he was going to get him." Santiago also stated he told the male in the van that he "was going to bring [his] friends back with guns." Sergeant Barclay got back into his patrol car after Santiago indicated he wanted no further involvement with the police and did not intend to file a complaint.

As Barclay was backing up, an unidentified man ("John Doe") flagged him down in front of a bar. The two then went into the bar, where John Doe told Sergeant Barclay "that there was a man that he knew that had a gun that was coming to get him" and pointed out the window and across the street at Serrano, who was standing beside the

---

[1] The following facts are taken from the District Court's July 8, 2013 Memorandum. *United States v. Serrano*, No. 12-0452, 2013 WL 3432048 (E.D. Pa. July 9, 2013).

passenger door of a minivan. Although Doe did not identify himself, he told Barclay that he was a cousin of Serrano's wife and that Serrano had threatened him with a gun two days earlier. According to Sergeant Barclay's testimony, Doe "appeared genuinely upset and scared" and was "shaking."

Sergeant Barclay then saw Serrano look in his direction and "jump[] into" the passenger side of the minivan. Concerned that Serrano might leave the area, Barclay told Doe to wait inside and drove up behind Serrano's minivan, which was then shifted into gear. Barclay then effected an investigatory stop of the vehicle. Officers recovered a handgun and ammunition from the minivan.

### B.[2]

The Government indicted Serrano for possessing a firearm as a felon. *See* 18 U.S.C. §§ 922(g)(1), 924(e). Serrano moved to suppress the evidence from the stop on the grounds that the police lacked reasonable suspicion to stop him under *Terry v. Ohio*, 392 U.S. 1 (1968). Applying our five-factor framework first articulated in *United States v. Brown*, 448 F.3d 239, 249-50 (3d Cir. 2006), to assess the reliability of the informants' tips, the District Court found the officers had reasonable suspicion under the totality of the circumstances to stop Serrano.

Serrano pled guilty but reserved the right to appeal the denial of the motion. The District Court sentenced Serrano to 180 months in prison, the statutory mandatory minimum for possession by a felon with "three previous [qualifying] convictions." *See* 18

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

3

U.S.C. § 924(e)(1).

Serrano raises two issues on appeal. First, he claims, the court should have suppressed the firearm and ammunition recovered because the police lacked reasonable suspicion for the stop. Second, he argues, the court erroneously concluded it was constrained to impose a fifteen-year minimum sentence.

## II.

In Serrano's view, Santiago's and Doe's tips were unreliable under *Brown*'s five-factor framework (as restated in *United States v. Johnson*, 592 F.3d 442, 449 (3d Cir. 2010)) and, consequently, the court erred in finding the police had reasonable suspicion to make a *Terry* stop.

## A.

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). But evidence obtained as the result of such a "*Terry* stop" "that does not meet this exception must be suppressed as 'fruit of the poisonous tree.'" *Brown*, 448 F.3d at 244 (quoting *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963)).

"When a *Terry* stop is based on a tip provided by an informant, we must scrutinize the informant's 'veracity, reliability, and basis of knowledge' to determine whether the information relied upon by the police was sufficient to establish reasonable suspicion for the stop." *Johnson*, 592 F.3d at 449 (quoting *United States v. Torres*, 534 F.3d 207, 210 (3d Cir. 2008)). In particular, we ask whether:

4

(1) the information was provided to the police in a face-to-face interaction, allowing an officer to assess directly the informant's credibility;

(2) the informant can be held responsible if her allegations are untrue;

(3) the information would not be available to the ordinary observer;

(4) the informant has recently witnessed the criminal activity at issue; and

(5) the witness's information accurately predicts future activity.

*Id.* (citing *Torres*, 534 F.3d at 211, and *Brown*, 448 F.3d at 249-50).

We do not apply these factors rigidly, however, because "[u]ltimately" our question is "whether [a] tip 'possessed sufficient indicia of reliability, when considering the *totality of the circumstances*, for us to conclude that the officers possessed an objectively reasonable suspicion sufficient to justify a *Terry* stop.'" *Torres*, 534 F.3d at 211 (quoting *Brown*, 448 F.3d at 250); *see also, e.g.*, *Johnson*, 592 F.3d at 449; *United States v. Valentine*, 232 F.3d 350, 354 (3d Cir. 2000) (explaining that the Supreme Court "uses a flexible standard that assesses the relative value and reliability of an informant's tip in light of the totality of the circumstances"). Accordingly, "[t]hough these factors all are relevant to our analysis, no single factor is dispositive or even necessary to render an informant's tip reliable." *Johnson*, 592 F.3d at 449.

**B.**

Although Serrano concedes Sergeant Barclay received "both tips . . . in face-to-face encounters" and "testified that in his estimation the informants were credible," Appellant's Br. 6, he contends the court erred in evaluating the four remaining informant tip factors. We disagree. Like the trial court, we conclude that, in light of the circumstances as a whole, the police had reasonable suspicion to detain Serrano for

5

further investigation.

First, Sergeant Barclay was able to assess the tipsters' credibility face-to-face. In particular, he "observed that John Doe 'appeared genuinely upset and scared.'" 2013 WL 3432048, at *1; *see also, e.g.*, *Valentine*, 232 F.3d at 354 ("[W]hen an informant relates information to the police face to face, the officer has an opportunity to assess the informant's credibility and demeanor."). Further, Santiago's statement against interest lends credibility to his tip. *See* 2013 WL 3432048, at *1 (noting that Santiago related to Sergeant Barclay that he told the male in the van that he "was going to bring [his] friends back with guns"). As the government reasons, "[t]hat Santiago was willing to implicate himself in potential criminal activity strongly suggested that he was telling the truth about the man and the gun." Gov't Br. 16-17; *cf.* Fed. R. Evid. 804(b)(3) (excepting from the hearsay bar a statement that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it . . . had so great a tendency . . . to expose the declarant to civil or criminal liability," as well as sufficiently trustworthy statements that "tend[] to expose the declarant to criminal liability").

Second, we do not believe, as Serrano appears to suggest, that the informants' tips were unreliable because they were made anonymously. *See* Appellant's Br. 7. As the court explained, "Israel Santiago gave police his name and the unnamed tipster identified himself as a cousin of Serrano's wife, and remained in the bar until the gun was recovered from Serrano." 2013 WL 3432048, at *4. Accordingly, the court was right to conclude that the police could have found both informants and held them accountable, if necessary. *See, e.g.*, *Torres*, 534 F.3d at 213 (reasoning that although an informant may

6

be "innominate (*i.e.*, unidentified)," if he provides enough information to "be found if his tip prove[s] false," he is not an "anonymous (*i.e.*, unidentifiable) tipster who could lead the police astray without fear of accountability"); *Valentine*, 232 F.3d at 355 (explaining that an informant's knowledge "that the officers could quickly confirm or disconfirm the tip" and "had some opportunity to find the informant if the tip did not pan out" supported "the reliability of the tip"). And in any event, "[w]hat matters for our purposes is not that the officers could guarantee that they could track down the informant again," but rather "whether the tip should be deemed sufficiently trustworthy in light of the total circumstances." *Valentine*, 232 F.3d at 355; *cf., e.g.*, *Navarette v. California*, 134 S. Ct. 1683, 1688 (2014) ("Even assuming for present purposes that the 911 call was anonymous, we conclude that the call bore adequate indicia of reliability for the officer to credit the caller's account." (citation omitted)). The surrounding circumstances here, including especially Doe's remaining in the bar while Sergeant Barclay investigated, Santiago's statement against interest, and Barclay's opportunity to read Doe's body language, render the informants' tips sufficiently reliable.

Third, Serrano misapprehends the law and the facts regarding the third *Brown* factor in arguing the District Court erred in finding that the tipsters had "information that would not be available to an ordinary observer." Appellant's Br. 8; *see* 2013 WL 3432048, at *4 ("[B]oth informants provided Sgt. Barclay with information that was not available to the ordinary observer."). Serrano's argument seems to suggest that an informant's tip must "corroborate" or "verify something that police already knew." Appellant's Br. 9. This is neither the rule nor reality, for such omniscient police would

7

need no tips. Moreover, both Santiago and Doe complained of being threatened with a gun—something, in their accounts, not necessarily available to an ordinary observer.

In any event, Serrano's citations for this proposition (and, consequently, the rationale behind it) are inapposite. The informant in *United States v. Roberson*, 90 F.3d 75 (3d Cir. 1996), was a truly anonymous caller. *See id.* at 75-76. Reliability questions are more problematic when tipsters are truly anonymous.[3] True anonymity makes an informant's particularized knowledge of a "type of activity and location [that] match[] a pattern of criminal activity known to the police, but not to the general public" relevant because the tipster's "familiarity with the conduct being reported" serves as an indicator of veracity and reliability. *United States v. Nelson*, 284 F.3d 472, 484 (3d Cir. 2002). Similarly, special police knowledge is probative when a suspect's reported acts are "capable of innocent explanation," but the special knowledge raises a sufficient probability of criminality to justify a stop "'to resolve the ambiguity.'" *Valentine*, 232 F.3d at 356 (quoting *Wardlow*, 528 U.S. at 125). But the informants here were neither anonymous nor attempting to report acts capable of innocent explanation. Instead, both

---

[3] *See, e.g.*, *Alabama v. White*, 496 U.S. 325, 329 (1990) ("[A]n anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity . . . ."); *Florida v. J.L.*, 529 U.S. 266, 275 (2000) (Kennedy, J., concurring) ("An anonymous telephone tip without more is different . . . . If the telephone call is truly anonymous, the informant has not placed his credibility at risk and can lie with impunity. The reviewing court cannot judge the credibility of the informant and the risk of fabrication becomes unacceptable."); *see also Roberson*, 90 F.3d at 79 n.3 ("That case involved the use of descriptions by *identified* witnesses and not the tip of an *anonymous* informant. As we have explained, the latter situation has a particularized jurisprudence under *Illinois v. Gates*[, 462 U.S. 213 (1983),] and *Alabama v. White*." (citation omitted)).

described having been threatened with a gun.[4]

Serrano next complains that the fourth *Brown* factor is not met because the tips referred to past, rather than recent or ongoing, criminal activity. Appellant's Br. 10-11. This characterization is not entirely accurate, as we credit the court's finding that "Santiago claimed to have recently witnessed criminal activity, in stating that 'he had gotten into an argument at the bar and that when he walked outside a male in a van had showed him a gun and told him he was going to get him.'" 2013 WL 3432048, at *4 (citing 18 Pa. Cons. Stat. Ann. § 2706 (terroristic threats)). We also find relevant to the totality of the circumstances analysis John Doe's report "that Serrano 'had a gun [and] was coming to get him' based on the fact that Serrano had threatened him with a gun two days earlier." *Id.* Many threats—especially one so recent—are by definition ongoing, even if they may be criminal at the moment they are uttered. *Cf.* 18 Pa. Cons. Stat. Ann. § 2706. Sergeant Barclay testified that he thought Doe worked at the bar because Doe "was wearing clothing that would be associated with a restaurant or bar worker." App. 56-57. Serrano's appearance at Doe's place of work two days after allegedly threatening Doe suggests both ongoing criminal activity and the appropriateness of an immediate investigatory stop. The reasonable suspicion case law does not automatically prohibit police from stopping suspects to investigate past crimes. *See, e.g.*, *United States v. Hensley*, 469 U.S. 221, 228-29 (1985).

Fifth, although the court found "neither informant satisfied" *Brown*'s "prediction

---

[4] Moreover, in *Roberson* we recognized that "a different rule may apply" "when the tip involves an allegation that the defendant was carrying a gun rather than dealing drugs." 90 F.3d at 81 n.4.

9

of future activity" factor, 2013 WL 3432048, at *4, we have explained that this element is not essential in all cases. "[W]hile predictive information can demonstrate particularized knowledge, other aspects of the tip can reflect particularized knowledge as well," *Nelson*, 284 F.3d at 483-84, and "predictive information is not required where an officer had objective reason to believe that a tip had some particular indicia of reliability," *Torres*, 534 F.3d at 213 (citation and internal quotation marks omitted). And more to the point, each informant here "was complaining of activity that was happening to *him*; he was one of the people being victimized . . . . It was only reasonable to conclude that he possessed special knowledge," *Nelson*, 284 F.3d at 484—and all the more so when Doe claimed to have a familial relationship with Serrano, *see* App. 57 (Barclay's testimony) ("It made it a little more credible that . . . he actually had a relationship with the defendant.").

## C.

Serrano's final challenge to the denial of his suppression motion concerns the court's finding that the informants' tips were corroborated by other information. *See* Appellant's Br. 11-14. But all of the circumstances, in their totality, gave the police reasonable suspicion to stop Serrano. Moreover, while "[t]he reliability of an informant's tip can be enhanced further by independent police corroboration of the information provided," *Johnson*, 592 F.3d at 450, there is no universal requirement of corroboration, which is often more significant in cases with anonymous tipsters, *see, e.g.*, *Navarette*, 134 S. Ct. at 1688 ("In *White*, . . . [w]e held that the officers' corroboration of certain details made the anonymous tip sufficiently reliable to create reasonable suspicion of criminal activity." (discussing *Alabama v. White*, 496 U.S. 325 (1990))).

10

That the neighborhood might not have been a high crime area is not dispositive. When the concern is that the suspect might have a gun and has threatened to use it, then, as the government points out, the presence of many people on the street "actually heightened the concern that [Serrano] posed a risk to others." Gov't Br. 22; *cf., e.g.*, *Roberson*, 90 F.3d at 81 n.4 ("Th[e] element of imminent danger distinguishes a gun tip from one involving possession of drugs. . . . Where guns are involved, . . . there is the risk that an attempt to 'wait out' the suspect might have fatal consequences." (quoting *United States v. Clipper*, 973 F.2d 944, 951 (D.C. Cir. 1992))); *Navarette*, 134 S. Ct. at 1691-92 ("Nor did the absence of additional suspicious conduct, after the vehicle was first spotted by an officer, dispel the reasonable suspicion of drunk driving. . . . [A]llowing a drunk driver a second chance for dangerous conduct could have disastrous consequences."). Similarly, Serrano stretches too far when he urges that "an allegation from an unknown male that someone had a gun two days ago is totally irrelevant to whether someone has a gun in the present." Appellant's Br. 14 (emphasis omitted). John Doe's claim of a two-day-old threat may be less probative of instant gun possession than an immediately preceding threat, but it is far from irrelevant.[5]

---

[5] We note as well that John Doe's tip was hardly the "tenuous connection" to "a man in a van" that Serrano claims. Appellant's Br. 14. Serrano does not challenge the District Court's finding that "Doe identified the man he believed had a gun [i.e., Serrano] by pointing out the window of the bar and across the street" at a man by "a minivan which had the passenger door open." 2013 WL 3432048, at *1. Moreover, Sergeant Barclay's testimony demonstrates that he was also considering the information from Santiago, namely, "[t]hat a male in a van had a gun," when he went to stop Serrano. App. 54.

Additionally, although Serrano's entering the van and its shifting into gear would not by itself give rise to reasonable suspicion, it is nonetheless "a factor that can be considered in the totality of the circumstances." *Valentine*, 232 F.3d at 357. In any event,

In sum, because we find no error in the District Court's conclusion that the police had reasonable suspicion to stop Serrano's vehicle, we will affirm the denial of Serrano's suppression motion.

## III.

In the alternative, Serrano contends he should be resentenced. First, he asserts, the court erroneously thought it lacked authority "to deviate from the mandatory sentence." Appellant's Br. 21. But as we have oft noted, "[w]hen Congress establishes a minimum sentence for a particular crime, district courts are required to sentence defendants guilty of that crime to a term of imprisonment no less than the Congressionally prescribed minimum, unless an explicit exception to the minimum sentence applies." *United States v. Winebarger*, 664 F.3d 388, 392 (3d Cir. 2011). The relevant statute here provided that Serrano had to be "imprisoned not less than fifteen years." 18 U.S.C. § 924(e)(1). Consequently, the District Court lacked discretion to sentence him to anything less than the fifteen-year term it imposed.

Second, Serrano argues, the imposition of a mandatory minimum sentence violated his due process rights because "liberty is a fundamental right and therefore," under "the principle of the least restrictive alternative," the court should have sentenced him to a term no "greater than necessary to achieve the purposes of sentencing." Appellant's Br. 17. But we have "repeatedly held that there is no due process right to individualized sentences." *United States v. MacEwan*, 445 F.3d 237, 252 (3d Cir. 2006);

---

the court did not rely on this conduct alone, so Serrano's attempt to rebut it does not detract from the reasonableness of the police's suspicion.

*see also Ehrsam v. Rubenstein*, 917 F.2d 764, 766 (3d Cir. 1990). Moreover, like the Supreme Court, we have rejected the application of a narrow tailoring test to sentencing. *See, e.g.*, *Chapman v. United States*, 500 U.S. 453, 465 (1991) ("Every person has a fundamental right to liberty in the sense that the Government may not punish him unless and until it proves his guilt beyond a reasonable doubt at a criminal trial conducted in accordance with the relevant constitutional guarantees. But a person who *has* been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment." (citations omitted)); *United States v. Walker*, 473 F.3d 71, 76 (3d Cir. 2007). Accordingly, Serrano's due process theory is incompatible with our case law and that of the Supreme Court. *Cf. also, e.g.*, *MacEwan*, 445 F.3d at 247-48 (explaining the "principle of substantial deference" in proportionality analysis for mandatory minimum sentences under the Eighth Amendment); *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.").

**IV.**

Because the District Court properly denied Serrano's suppression motion and correctly applied the minimum sentence mandated by 18 U.S.C. § 924(e)(1), we will affirm the judgment of conviction and sentence.