UNITED STATES of America,

v.

Chislon THOMAS, Appellant.

No. 02–3700.

United States Court of Appeals,
Third Circuit.

Argued on April 28, 2003.

Decided Aug. 29, 2003.

Nelson L. Jones (Argued), Asst. U.S. Attorney, Charlotte Amalie, St. Thomas USVI, for Appellee.

Douglas J. Beevers (Argued), Asst. Federal Public Defender, Charlotte Amalie, St. Thomas USVI, for Appellant.

Before ROTH, McKEE and COWEN, Circuit Judges.

OPINION

ROTH, Circuit Judge.

On March 15, 2001, drug-enforcement agents followed up on a phone call from Wharton, an alleged co-conspirator of appellant Chilson Thomas, which eventually led to Thomas' arrest for possession of an unlicensed firearm in violation of V.I. CODE ANN. tit. 14, § 2253(a). He moved to suppress the firearm on the grounds of an illegal search that violated the Fourth Amendment. The suppression hearing judge denied the motion, holding that the agents had reasonable suspicion to stop

Thomas, and that they had probable cause to arrest him. We will affirm.

At approximately 9:00 p.m. on March 14, 2001, Wharton scaled the manager's desk at the Bolongo Beach Resort Hotel and pled with him to call the police. He feared that his life was in danger because he believed his co-conspirators to a drug transaction had other plans for him. After the agents escorted Wharton downtown, they returned to the hotel (A24). The manager confirmed Wharton's account of the events and added that there were five other people he believed were with Wharton, three of whom checked out of their room at the hotel immediately after the police left with Wharton, and that the two others, hanging around the bar, left shortly thereafter (A25–26). The manager overheard that the suspects were headed to the Windward Passage Hotel. Agents searched the vacated hotel room, and found telephone numbers, airline receipts and a container of baby wipes that are ordinarily used to conceal the odor of cocaine (A27). Surveillance of the Windward Passage Hotel was established at 4:30 a.m. on March 15, 2001, and hotel security verified that the suspects were registered at the hotel. Further surveillance told the agents that the suspects were leaving a nightclub at 5:30 a.m (A29–30). At approximately 5:45 a.m. the agents obtained consent to search the suspects' rooms, and inside they found approximately $28 000.

At approximately 8:20 a.m., while seizure paperwork was being finished, Thomas and a second individual, Gonzalez, came to the top of the stairs, approached the rooms, and upon seeing the agents quickly turned back downstairs (A35). The agents followed them downstairs and saw them on the house phone and again upon seeing the agents, Thomas and Gonzalez left the hotel. The agents followed both men and asked each if he would talk to them (A37,

55). The officers identified themselves as such and separated the two for independent interviews. As Thomas walked toward Agent Poist's car, Agent Velasquez noticed a knife protruding from Thomas' pocket and apprised Poist of the knife, who in turn asked Thomas if he minded them patting him down, and then right after asked Thomas to "empty [his] pockets" (A67). When asked if he minded, Thomas said "yeah" (A77). Frisking but feeling nothing, Poist asked Thomas to empty his pockets (A77). Thomas pulled out a bandana which prompted Poist to say "no pull it all out" (A77). Thomas then pulled out a firearm magazine from his pocket but tried to hide it in his hand (A87). Velasquez saw the magazine and, put Thomas in a wristlock and asked where the gun was (A57). Velasquez found the gun and immediately arrested Thomas. The search incident to arrest yielded a cellular telephone (A62).

The issues we address are (1) whether the agents had reasonable suspicion to stop Thomas; (2) if not, whether Thomas voluntarily consented to the search; (3) whether Thomas' arrest was supported by probable cause, and (4) whether the District Court was correct in denying Thomas' motion for return of property. Questions of what meets the standard of reasonable suspicion, voluntary consent, and probable cause are questions of law over which we exercise plenary review. *United States v. Coward*, 296 F.3d 176, 179 (3d. Cir.2002). Motions for return of property are reviewed under the clearly erroneous standard. *United States v. Francis*, 646 F.2d 251, 262 (6th Cir.1981). We resolve all four issues in the affirmative.

■ First, we hold that the agents had reasonable suspicion to justify the *Terry* stop and frisk made on Thomas when he was leaving the hotel. In *Terry v. Ohio*, the Supreme Court held that an officer

may stop an individual, question him briefly, and perform a limited pat-down frisk for weapons, so long as the stop is justified by reasonable, articulable suspicion of criminal activity having occurred or being imminent. An officer is allowed to consider personal observations and the collective knowledge of several law enforcement personnel in determining whether reasonable suspicion exists. 392 U.S. 1, 26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In assessing the reliability of a tip, this court has held that reasonable suspicion may be based on a tip which includes a means of corroborating the information, assessed according to the *Illinois v. Gates* test. *United States v. Roberson*, 90 F.3d 75, 79–80 (3rd Cir.1996). The *Gates* test hinges reliability on both the informant's credibility and the basis for knowledge. 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Wharton's tip had the requisite reliability under the *Gates* test. First, the tip was inherently reliable because it was against Wharton's interest. Concerning credibility, Agent McHugh testified that he believed what Wharton told him at the police station (A27). Second, the agents were able to independently corroborate many of Wharton's assertions. The airline tickets found at the Bolongo Hotel corroborated Wharton's assertion of two of the suspects' departure destinations. His assertions of fearing for his life were corroborated by the front desk manager whose office Wharton hid in. The $28 000 found in the room further corroborated Wharton's assertion that a drug transaction was about to transpire. The Bolongo manager's observation that Thomas and Gonzalez were with Wharton and his conspirators was corroborated by police when they saw both men leave the hotel when the three others left too. Third, the evasive conduct displayed by Thomas and Gonzalez, when they saw the agents at the top of the stairs and turned back, and when they left the

hotel after the agents followed them downstairs is certainly relevant evidence in determining whether criminal activity is afoot. *See United States v. Levy*, 865 F.2d 551, 558 (3d Cir.1989); *United States v. Brown*, 159 F.3d 147, 149 (3rd Cir.1998). Therefore, we hold that the agents had the requisite reasonable and articulable suspicion to conduct a *Terry* stop on Thomas.

■ Second, since we hold that the agents had reasonable suspicion to conduct the stop and frisk, we need not determine whether Thomas consented to it. However, in that alternative, we do find that Thomas did consent to the search of his pockets. The detainee's consent must be voluntary, and voluntariness is judged from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In this case, Thomas was not in custody. He was asked if he would speak to the agents and he agreed. Agent Poist testified that he spoke in a conversational tone. Futhermore, Thomas testified that he knew he had a right to refuse to allow a search (A97). Therefore, Thomas consented to the search of his pockets.

■ Third, we hold that Thomas' arrest was supported by probable cause. Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. *United States v. Cruz*, 910 F.2d 1072, 1076 (3rd Cir.1990). Thomas argues that his arrest on the basis of an unlicensed firearm is inconsistent with our holding in *United States v. Ubiles*. In *Ubiles*, we held that it was not reasonable to suspect that a person carrying a concealed firearm was committing a crime, unless the officer had reason to suspect the person was not licensed to

carry that firearm. 224 F.3d 213, 217–218 (3rd Cir.2000). This case is distinguishable from *Ubiles*. In *Ubiles*, there was no reason to suspect that criminal activity was afoot at the time police decided to stop Ubiles. All the police had supporting their stop was an anonymous tip about a man at a crowded street festival. *Id.* at 214. *See Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). In contrast with *Ubiles*, here the agents were aware of much more information. They were aware that a drug transaction was scheduled to take place involving men Wharton named, that over $28 000 had been recovered from the hotel room, and they were aware of the evasive conduct demonstrated by Thomas upon observing and being followed by the agents, and of course Wharton's statement that he thought he was going to be killed. These facts were enough to provide probable cause for the arrest. Even if we accept Thomas' argument that these facts were not enough to support probable cause, we still find the unlicensed firearm, the fruit of a legal stop and frisk, provided probable cause for the arrest. The District Judge who heard the motion to suppress stated that "certainly it makes sense that somebody having a gun on—*unless he proves he has a license*—is against the law" (A138–139)(emphasis added). Since Thomas was in possession of the firearm and could not prove he had a license for it, he was in violation of the law—clear probable cause that a crime was being committed. Therefore, the arrest was supported by probable cause and hence valid.

■ Fourth, we hold that the District Judge correctly denied Thomas' Rule 41(e) motion for return of property. To keep property, the Government must prove "that it had a legitimate reason not to return the property to the person from whom it was seized." *Government of the Virgin Islands v. Edwards*, 903 F.2d 267

(3rd Cir.1990). The Government's intent to use property as evidence is a continuing interest which can prevent return of property under Rule 41(e). *United States v. 608 Taylor Avenue*, 584 F.2d 1297, 1303 (3rd Cir.1978). Thomas was suspected of drug trafficking. He testified that the cellular phone was purchased in New York and that it did not work in the Virgin Islands. The evidentiary value of the phone is the information contained in it in the form of numbers dialed, when calls were made, and to whom. Therefore, the judge correctly denied Thomas' Rule 41(e) motion.

In sum, we hold that the agents' stop of Thomas' was reasonable, consented to, and the arrest that stemmed from it was supported by probable cause. Also, we hold that the Government need not return the seized cellular phone to Thomas. The judgment of the trial court is affirmed.