

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-11-2005

# USA v. Garcia-Moreno

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1428

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Garcia-Moreno" (2005). *2005 Decisions.* Paper 1214.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1214

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NOS. 04-1428 & 04-1429

_____

UNITED STATES OF AMERICA

v.

RUBEN DARIO GARCIA-MORENO and
RICARDO FRANCO-GARCIA
*Appellants*

_____

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Nos. 01-cr-00729-2 & 01-cr-00729-3)
District Judge: Honorable Joseph A. Greenaway, Jr.

_____

Submitted Under Third Circuit LAR 34.1(a)
April 18, 2005
Before: ROTH, FUENTES and BECKER, *Circuit Judges*.

(Filed May 11, 2005)

_____

OPINION

_____

BECKER, *Circuit Judge*.

Defendants, Ruben Dario Garicia-Moreno and Ricardo Franco-Garcia filed this consolidated appeal following their conviction after a bench trial on stipulated facts on charges of conspiracy to distribute and possess with intent to distribute in excess of five grams of cocaine. In essence, Defendants appeal the District Court's denial of their suppression motions alleging that the police did not have probable cause to arrest them and then search their persons and their automobile. In addition, they claim that their co-defendant did not give voluntarily consent to a search of the apartment. We conclude, however, that there was probable cause for the arrest and search and that the District Court's finding that the co-defendant consented to the apartment search was not clearly erroneous. We will therefore affirm.

We review the District Court's findings of fact for clear error, *United States v. Roberson*, 90 F.3d 75 (3d Cir. 1996), and questions of law *de novo*, *Orenelas v. United States*, 517 U.S. 692, 699 (1996).

I.

A.

On October 17, 2001, a confidential informant told DEA agents that there was suspicious behavior taking place at Apartment 206 of an apartment complex in Edgewater, New Jersey. A.199. Law enforcement officers observed that a deadbolt had been placed on the apartment door, in violation of the apartment rules. Investigating further, the officers were told by the complex's superintendent that he did not know that

2

anyone was occupying the apartment, although the security deposit and rent had been paid for in cash. A.200-01.

For three days beginning October 29, 2001, the DEA conducted surveillance of the apartment and observed the comings and goings of Luis Valencia-Garcia, and defendants Garcia-Moreno, and Franco-Garcia. The DEA agents observed defendants engage in counter-surveillance techniques included "squaring the block" (meaning driving around the block), u-turns on small streets, parking at a distance from the destination, and unusual driving maneuvers. The agents testified that they saw defendants looking over their shoulders and that they appeared nervous. Defendants were also seen entering and exiting the apartment with large duffel bags.

On November 1, 2001, the agents saw Garcia-Moreno and Franco-Garcia leave the apartment and enter a black Honda civic in the parking garage of the apartment complex. The pair then parked the car nearby and got into a Volkswagen Fox. The agents testified that they were unable to follow the car because of the counter-surveillance measures taken by defendants. Later that afternoon, the DEA agents observed Franco-Garcia, now driving a Toyota Camry, going in circles around the apartment complex, before eventually entering the complex's garage. A. 219. The DEA agents testified that they suspected this third car, the Camry, was a "load car" which contained narcotics. A.320-21.

The agents saw Franco-Garcia take a large black suitcase out of the car, which

3

appeared empty, and walk toward the complex. He then turned around, opened the trunk of the car, put the suitcase back into the trunk, and sat on a bench in front of the complex. A.222. Garcia-Moreno returned to the complex, parked in a nearby lot, and joined Franco-Garcia on the bench. Both entered the apartment together and left shortly thereafter. Garcia-Moreno retrieved the black suitcase from the trunk of the Camry and returned to the apartment.

Valencia-Garcia then drove into the parking garage in a Mazda pick-up truck which he backed into the space closest to the elevators, and went outside to sit on the same park bench. Garcia-Moreno came out of Apartment 206 with a large, apparently heavy, duffel bag, which he placed in the open front passenger door of the pick-up truck, and then joined Valencia-Garcia on the park bench. After a brief conversation, Valencia-Garcia drove the truck away with the duffel bag inside, followed by DEA agents. Garcia-Moreno returned to Apartment 206.

Forty-five minutes later, the agents observed Garcia-Moreno and Franco-Garcia leaving Apartment 206, with Garcia-Moreno once again carrying a large, apparently heavy, black duffel bag. Franco-Garcia was wheeling the black suitcase. The suitcase and the duffel bag were placed into the Toyota Camry.

The agents suspected that these bags contained narcotics or narcotics proceeds and at this point approached Franco-Garcia and Garcia-Moreno. After Agent Roberts identified himself, both men attempted to run away on foot, but were quickly

4

apprehended. A. 228-29. The trunk and car door of the Camry were left open. Agent Roberts saw bricks of cocaine in the duffel bag in the open trunk. He then opened the front passenger door where he opened the bag and found more cocaine bricks. Lab tests later revealed that this was indeed 50 kilograms of cocaine. The officers then arrested Franco-Garcia and Garcia-Moreno.

Meanwhile, the agents following Valencia-Garcia stopped his car and saw the duffel bag in plain view in the front passenger seat. The officers searched the pick-up truck and the duffel bag and seized approximately 26 kilograms of cocaine. Valencia-Garcia had consented to the automobile search and signed a consent form at the scene. A.239-242.

To summarize, the facts supporting the agents' probable cause for the arrest were: 1) the payment for the apartment rent and security deposit in cash; 2) the unauthorized deadbolt on the apartment door; 3) the fact that the landlord apparently believed the apartment was unoccupied; 4) the use of extreme counter-surveillance driving techniques over a three-day period; 5) the use of three vehicles in one day and the frequent switching of vehicles; 6) dropping off suitcases and duffel bags into unoccupied vehicles while the owner waits at a distance; 7) the assessment of the demeanor and actions of the defendants by trained government agents; and 8) that defendants fled as soon as the law enforcement officers identified themselves, *see United States v. Brown*, 159 F.3d 147, 150 (3d Cir. 1998) ("deliberately furtive actions and flight at the approach of strangers or

law officers are strong indicia of mens rea") (quoting *Sibron v. New York*, 392 U.S. 40, 66 (1968)).

B.

We agree with the government that "it is difficult to imagine an innocent explanation for the multitude of counter-surveillance techniques engaged in by the defendants over an extended period of time." Red B. at 18. The Supreme Court has noted that although "innocent behavior frequently will provide the basis for showing of probable cause . . . [i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Illinois v. Gates*, 462 U.S. 213, 243-44 n. 13 (1983).

Moreover, courts in similar cases have found probable cause existed. For example, in *United States v. Soto*, 375 F.3d 1219, 1222 (10th Cir. 2004), the panel found probable cause for an arrest and search because "There was no apparent reason for the blue truck to circle the parking lot and later park there except to conduct counter-surveillance." In that case, the agents had arranged for a controlled drug transaction at a gas station where the defendants' peculiar driving of two pick-up trucks around the gas station area was sufficient to give rise to probable cause.

Similarly, probable cause was established in *United States v. Payne*, 119 F.3d 637, 642-43 (8th Cir. 1997), where law enforcement agents had observed an exchange of a first

6

empty, and then full, suitcase from a condominium complex, reminiscent of the exchange between Garcia-Moreno and Franco-Garcia. Agents had previously seized a box from the defendant which a drug-sniffing dog indicated had narcotics odor. *Id.* Agents had also observed the defendant using counter-surveillance driving techniques on the way to the condominium complex. *Id.* This was enough for the Eighth Circuit to find the agents had established probable cause. *See also United States v. Frost*, 999 F.2d 737, 743 (3d Cir.1993) (finding probable cause where defendant matched drug courier profile in an airport, acted furtively, became nervous when engaged in conversation by two detectives, and had employed counter-surveillance techniques even though drug-sniffing dogs had been without reaction when sniffing defendant's suitcase); *United States v. Ocampo*, 937 F.2d 485, 490 (9th Cir. 1991) (finding that the issuance of a warrant was supported by probable cause because defendant's "counter-surveillance driving, tandem driving, a car switch, and numerous beeper phone calls" were "facts indicative of narcotics distribution"); *United States v. Martinez-Molina*, 64 F.3d 719, 729 (1st Cir. 1995) ("It is well settled that counter-surveillance efforts are indicative of knowing participation in criminal activity."); *United States v. Marin*, 761 F.2d 426, 432 (7th Cir. 1985) (finding probable cause where agents had received an anonymous tip of drug activity corroborated by defendant driving two different automobiles, neither of which was registered in her name, driving circuitously defendant's resided, exiting the building carrying a brown paper bag while acting cautiously before entering the vehicle with another individual, and

7

again using circuitous driving techniques).

Given the totality of the facts and the significant precedent on this issue, we will affirm the judgment of the District Court that there was probable cause to 1) arrest defendants; 2)searched defendant's person; and 3) search defendant's vehicle.

## II.

Defendants also challenge the search of the apartment following their arrest. The officers and defendants gave widely disparate versions of what transpired after the arrest. At the suppression hearing, the officers testified that defendants were Mirandized in Spanish. Franco-Garcia testified, however, that he did not receive the Miranda warnings. It is uncontested that neither defendant initialed the Miranda card, although Detective Romero claims this was because the warnings were on hard cardboard.

The agents also testified that Franco-Garcia voluntarily consented to a search of Apartment 206. The defendants were each placed in separate police cars. The officers represented that Franco-Garcia was not handcuffed in the police van, but Franco-Garcia claims that he was handcuffed until he was searched. Detective Romero spoke with Franco-Garcia in Spanish through the window of the van, and Agent Roberts was standing nearby. It was at this point that Agent Roberts contended Franco-Garcia consented to the search and gave the officers the keys to the apartment. Franco-Garcia, however, insists that he did not consent to the apartment search, and that he was hit in the face three times by Romero. A.439-43. No consent form was signed, although the

officers claim this was because they did not have such a form on site and because, Agent Roberts testified, he did not think it was necessary at the time. A.238-240. When later asked to sign a consent form at the DEA office, Franco-Garcia refused to sign it.

The District Court's decision credited the testimony of Agent Roberts and Detective Romero over the testimony of Franco-Garcia, to find that Franco-Garcia had in fact consented to the apartment search. We review this determination for clear error. *United States v. Igbonwa*, 120 F.3d 437, 440 (3d Cir. 1997). While defendants raise some minor inconsistencies in the agents' testimony at the suppression hearing, this is not enough for us to say the District Court's determination was clearly erroneous. Additionally, for the reasons set forth in Part I, we held there was sufficient probable cause to arrest Franco-Garcia and so, we do not agree with Defendant's argument that the consent was the product of an illegal arrest. Similarly, the District Court did not believe Franco-Garcia's testimony that consent was "beat out" of Franco-Garcia, and this factual finding was not clearly erroneous. The judgment of the District Court will therefore be affirmed.

III.

Defendants also raise a series of challenges based on the sentencing guidelines. Having determined that the sentencing issues appellant raises are best determined by the District Court in the first instance, we will vacate the sentence and remand for resentencing in accordance with *United States v. Booker*, 543 U.S. —, 125 S. Ct. 738 (2005).