

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-22-2009

# USA v. Tyson

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3818

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Tyson" (2009). *2009 Decisions.* Paper 2002.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/2002

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3818
_____


UNITED STATES OF AMERICA,
                                         Appellant

v.

JOEL MICHAEL TYSON


_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

(D.C. No. 07-cr-00203)
District Judge:  The Honorable James Knoll Gardner
_____

ARGUED SEPTEMBER 9, 2008

BEFORE: SLOVITER, FUENTES, and NYGAARD, Circuit Judges.

(Filed: January 22, 2009)
_____

Francis C. Barbieri, Jr., Esq. (Argued)
Robert A. Zauzmer, Esq.
Office of the U.S. Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
                Counsel for Appellant


William J. Honig, Esq. (Argued)

538 Church Street
Norristown, PA 19401

Counsel for Appellee

_____

OPINION OF THE COURT

_____

NYGAARD, Circuit Judge.

The government appeals the District Court's order suppressing physical evidence. For the reasons that follow, we will reverse.

I.

Sergeant Michael Kalin, a 26-year veteran of the Reading Police Department, was on duty early one morning. He was in his patrol car, with the driver's window open, monitoring a private club that had been the locus for a number of disturbances. The area generally has a high incidence of crime.

At 3:15 a.m. Kalin heard 20 to 30 gunshots. He immediately reported the shots to the police dispatcher as he drove toward the area in which he believed the shots had been fired. After driving less than one block, he came upon an elderly man who was wearing only shorts. Based upon the manner in which he was dressed, Kalin judged that the man lived in the neighborhood. When Kalin asked him where the shots came from, the man pointed generally north in the direction of Rose Street saying "down there."

Kalin turned his vehicle onto Rose Street and came upon two well-dressed men walking down the street. He asked them about the gunshots, and one of the men simply pointed further down Rose Street. Kalin looked in that direction and saw two men standing next to some cars. He quickly drove to this location. Approximately two minutes had elapsed since he heard the gunshots.

Kalin observed one man standing next to a car with darkly tinted windows. Another man was standing nearby. He ordered the men to show their hands. One of the men was lighting a cigarette at the time and he continued to do so. The sergeant yelled at the man to show his hands, but the man ignored him. This caused Kalin to consider this man as a threat. He left his vehicle, drew his gun, and physically forced the man face-first onto to the hood of the car with the tinted windows. When Kalin did this, he noticed two men sitting inside the car. The man in the driver's seat was Tyson. Kalin pointed his gun at the windshield and ordered Tyson and the other occupant of the car, Franklin Caceras, to place their hands on the dashboard. They complied. At this point, back-up officers, including Officer Dinger, arrived and one of them ordered Tyson and Caceras out of the car. These officers handcuffed all of the men, patted them down and held them as they ran a check for warrants.

The police did not discover anything in their pat-downs. After the warrant check cleared, Dinger removed Caceras' handcuffs and also told him that he was free to leave. Caceras said that he wanted to wait for Tyson inside of the car, because it was cold. Dinger looked inside the car, shining a flashlight into the passenger side before allowing him to

3

reenter it. A short time later, Tyson's warrant check cleared and Dinger removed his handcuffs. Dinger looked into the driver's side of the car and, as with Caceras, shined a flashlight around the seat before permitting Tyson to reenter it. This search revealed the edge of a handle of a firearm under the seat.

Dinger seized the firearm and discovered that the barrel was warm. The magazine of the firearm was empty, but it had a capacity of 20 to 30 rounds. The officers arrested Tyson. Later that night, a search turned up 28 nine-millimeter casings that fit the seized weapon. Tyson was charged as a felon in possession of a firearm.

At a pre-trial hearing Tyson argued that Sergeant Kalin did not have reasonable suspicion to conduct an investigatory stop. Tyson also argued that, even if the investigatory stop was lawful, Officer Dinger's flashlight search of the car violated the Fourth Amendment because the authority for such a search ceased when the officers released him from handcuffs and told him that he was free to go.

The District Court found that Kalin did not have reasonable suspicion to conduct the investigatory stop and granted Tyson's motion to suppress. The court focused upon the fact that the two men who were standing in the parking lot were not doing anything inherently suspicious. The District Court essentially agreed with Tyson that the stop was based upon an unsupported hunch rather than reasonable suspicion.

II.

4

When determining the constitutionality of an investigatory stop, we examine whether "the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference . . . ." *United States. v. Goodrich*, 450 F.3d 552, 558 n. 6 (3d Cir. 2006), quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968). It is well established that "an officer cannot conduct a *Terry* stop simply because criminal activity is afoot." *Goodrich,* 450 F.3d at 560, citing *United States v. Brown,* 159 F.3d 147, 149 (3d Cir. 1998). Rather, reasonable suspicion unequivocally demands that "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *U.S. v. Brown*, 448 F.3d 239, 246 (3d Cir. 2006), quoting *United States v. Cortez,* 449 U.S. 411, 417-18 (1981). "At the same time, we must allow officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *U.S. v. Brown*, 448 F.3d at 246, quoting *United States v. Arvizu,* 534 U.S. 266, 273 (2002) (internal quotation marks omitted). In evaluating whether there was an objective basis for reasonable suspicion, we consider the totality of the circumstances. *Id.*

The facts of this case closely align with our own jurisprudence. In *Goodrich,* police received two phone calls from the same person starting at 11 p.m. A worker reported a possible theft in progress, seeing two people loading containers from a neighboring farm supply store into a vehicle that was parked nearby. There had been repeated thefts of tanks

5

of anhyrdrous amonia from this store in the past, and police regarded the area as a "hot spot" for criminal activity.

Officers were in the neighborhood within seven minutes and noticed a lone car with two occupants parked in the reported area. After seeing the police stop the car, the employee telephoned a second time to confirm that the police had stopped the right car. We found four factors that gave the police officers reasonable suspicion for their investigatory stop: 1) the reputation of the area for criminal activity; 2) the time of night; 3) the geographical and temporal proximity of the stop to the scene of the alleged crime; and 4) the general absence of other persons in the area. *Goodrich,* 450 F.3d at 561.

In this case we find the following evidence to be most significant. First, only two minutes lapsed between the gunshots that Kalin heard and his encounter with the group that included Tyson. Second, the group was squarely in the area that Kalin had already judged to be the point of origin for the shots, and this also matched the location indicated by other people in the area at the time. Third, the neighborhood had a reputation as a high crime area. Fourth, the two men that Kalin observed were standing next to a car with darkly tinted windows in a parking lot on a winter night at 3 a.m.. Fifth, Kalin perceived a threat from the man who ignored an order to show his hands. Guided by *Goodrich*, we conclude that the totality of the evidence in general, and these factors in particular, gave Kalin reasonable suspicion to conduct the investigatory stop that ultimately resulted in the seizure of the gun.

6

In considering a search of an automobile under similar circumstances, the Supreme Court has said that "[the] balancing required by *Terry* clearly weighs in favor of allowing the police to conduct an area search of the passenger compartment to uncover weapons, as long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous." *Michigan v. Long*, 463 U.S. 1032, 1051 (1983). Given the circumstances of the stop in this case, there is no question that the officers faced potential danger. They were in the specific area where gunfire had just occurred, they had reasonable suspicion of the group's connection to the gunshots, and the location of the gun remained unknown. This situation compelled officers to act with reasonable caution for their own safety. For that reason, we find that flashing a light in the area around the front seats of the car that had been, and was to be occupied by Caceras and Tyson was proper.

## III.

For these reasons, we will reverse the order of the District Court that granted the motion to suppress evidence and we will remand for further proceedings consistent with this opinion.