**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1679
_____

JASON SPEARS,

Appellant

v.

PASQUALE LEPORACE; CITY OF READING
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 09-cv-05749)
District Judge:  Honorable Lawrence F. Stengel

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 21, 2011

Before: CHAGARES, VANASKIE and STAPLETON, Circuit Judges

(Opinion filed: November 3, 2011)
_____

OPINION
_____

PER CURIAM

Jason Spears filed a pro se complaint pursuant to 42 U.S.C. § 1983, alleging that a

Reading police officer, Pasquale Leporace, unlawfully seized and searched him in

violation of the Fourth Amendment (which led to the discovery of a gun and to his

arrest).  In addition to Leporace, Spears initially sued the Reading Police Department, but

the District Court permitted him to amend the complaint to name the City of Reading as a defendant instead. The defendants filed a motion for summary judgment, which the District Court granted. The District Court concluded that Leporace was entitled to qualified immunity for his actions and that the City of Reading could not be held liable on the theory of liability that Spears advanced. Spears appeals.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment in favor of the defendants. Abramson v. William Patterson College, 260 F.3d 265, 276 (3d Cir. 2001).

First, we note that it is not entirely clear if Spears challenges the District Court's disposition of the claim against the City of Reading. However, to the extent he does challenge it, as the District Court explained, Spears did not present the evidentiary support necessary to sustain his claim of liability. See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690-92 (1978); Watson v. Abington Twp., 478 F.3d 144, 155-57 (3d Cir. 2007). Accordingly, the District Court properly granted summary judgment in favor of the City of Reading.

The District Court also properly concluded that Leporace was entitled to summary judgment on qualified immunity grounds. Qualified immunity shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The inquiry into the applicability of qualified immunity has two parts: (1) whether the plaintiff demonstrated

the deprivation of a constitutional right, and (2) whether that right was established at the time of the alleged deprivation. See Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citing the test set forth in Saucier v. Katz, 533 U.S. 194, 201 (2001)). The circumstances in any particular case determine which part of the test is addressed first. See id. at 236. The standard allows "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Kelly v. Borough of Carlisle, 622 F.3d 248, 254 (3d Cir. 2010) (citations and quotations omitted). However, an immunity defense ordinarily fails where the law is clearly established, because "a reasonably competent public official should know the law governing his conduct." Id. (citation and quotation omitted).

The right at issue is the Fourth Amendment's protection against "unreasonable searches and seizures." U.S. Const. amend. IV. Searches and seizures must be justified at their inception, and their scope must be reasonably related to the circumstances that justified the interference initially. See Terry v. Ohio, 392 U.S. 1, 19-20 (1968). A police officer may conduct a brief investigatory stop and a reasonable search for weapons for his own protection "where he has reason to believe that he is dealing with an armed and dangerous individual." Id. at 27. The "issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. (citations omitted). Due weight is accorded to specific reasonable inferences that stem from the facts in light of an officer's experience, but not to a mere "hunch." Id. Essentially, under the whole circumstances, the officer "must have a

particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981); see also United States v. Brown, 159 F.3d 147, 149 (3d Cir. 1998) (summarizing the test for reasonable suspicion).

Factors that support reasonable suspicion include the presence of a suspect in a high crime area, behavior that is nervous or evasive, and "behavior that conforms to police officers' specialized knowledge of criminal activity." United States v. Torres, 534 F.3d 207, 211 (3d Cir. 2008) (citation and quotation omitted); see also United States v. Goodrich, 450 F.3d 552, 561 (3d Cir. 2006) (listing also the time of day, or, more specifically, a late hour, particularly in a high crime area, as a factor). An officer can act reasonably in stopping a man whose acts, when viewed in isolation, were entirely legal, as long as the acts, taken in combination with other circumstances, give rise to a reasonable suspicion of criminal activity. See Johnson v. Campbell, 332 F.3d 199, 207-08 (3d Cir. 2003).

In this case, the defendants pointed to specific facts that supported reasonable suspicion. They produced evidence that Leporace arrived (with other officers from the vice division of the Reading Police Department) around 11:00 p.m. to investigate complaints of drug dealing at a bar called Travelers Pub. The bar is in a high-crime area[1]

---

[1] As the District Court noted, Spears objected to the characterization of the bar's location as "high-crime," contending there was no evidence in the record to support this description. However, Leporace's affidavit, in which he describes the area and the complaints by police, patrons, and bar employees, served as the source of evidence in the record, and Spears did not present any evidence to counter it. On appeal, Spears contends that statements in his response to the motion for summary judgment should have been considered evidence that controverted the description of the area as "high-crime."

and had been the subject of many similar complaints. Leporace, based on his 17 years of experience on the police force (12 of them in the vice division), knew that guns are often present where there is drug dealing. He also knew that individuals who carry guns often conceal them in their waistbands, perform "security checks" of their weapons to be sure the weapon is in place, and wear heavy clothes to hide the outline of a firearm.

When Leporace entered the bar, he saw Spears, wearing a heavy winter coat while sitting at a table indoors, look at the officers, arch his back, adjust something in his waistband, and quickly put his left hand inside his left coat pocket. The defendants submitted evidence that Leporace "believed [it] was a handgun in his waistband," providing Leporace's affidavit that he thought Spears was armed, citing the police report with the statement that "[Spears] appeared the [sic] adjust an unknown item in his waistband (similar to a handgun) and then quickly place his left hand in his left jacket pocket"; and submitting Leporace's pre-trial testimony that he saw Spears arch his back and adjust something in his waistband.[2]

Furthermore, when Leporace approached Spears and asked him if he had a gun in his waistband, Spears seemed to be extremely nervous and did not look Leporace in the eye, looking instead toward the exit. He hesitated before answering. Leporace then conducted a pat-down search of Spears's left coat pocket, where he felt three cell phones.

---

However, he did not state that the area was not a high-crime area or dispute the police calls to the bar. He just described the area as "not inner city" but "suburban."

[2] The Appellees have collected the transcript of this testimony and other relevant portions of the District Court record in a supplemental appendix that they seek to file. We grant

Leporace, in his experience in the vice division, has noted that persons who sell drugs often carry multiple cell phones. Leporace had Spears stand up from where he was sitting and patted him down again. Spears shrugged off his coat as he stood up; another officer searched it and found a gun with obliterated serial numbers.

Based on the evidence described above that supported reasonable suspicion, we agree with the District Court that there was no genuine issue of material fact on the issue whether a reasonable officer would have believed that his conduct was lawful. Accordingly, we conclude that summary judgment in favor of Leporace on qualified immunity grounds was proper.

For these reasons, we will affirm the District Court's judgment. As we noted above, the Appellees' motion to file the supplemental appendix attached to their brief is granted.

---

their request.