**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 25-1751

_____

MICHAEL KAPLON,
Appellant

v.

MORRIS TOWNSHIP POLICE DEPARTMENT; MADISON POLICE
DEPARTMENT; BOROUGH OF MADISON; TOWNSHIP OF MORRIS; CHIEF
MARK DICARLO; CHIEF DARREN P. DACHISEN, SR.; POLICE OFFICER OSCAR
PANCIANO; POLICE OFFICER YEBOAH; POLICE OFFICER BOENINGHAUS;
POLICE OFFICER HOUGH; POLICE OFFICER DECARO; JOHN DOES 1-10

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:20-cv-20559)
District Judge: Honorable Jamel K. Semper

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 6, 2026

_____

Before: SHWARTZ, BIBAS, and PHIPPS, Circuit Judges.

(Filed: March 11, 2026)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

SHWARTZ, Circuit Judge

Michael Kaplon appeals the District Court's order granting Defendants summary judgment on his civil rights and tort claims. For the following reasons, we will affirm.

I

A[1]

In the predawn hours of February 11, 2020, Kaplon crashed his mother's car into a utility pole near her home while driving under the influence of alcohol. He left the scene on foot and headed towards his mother's house. Officers discovered the abandoned vehicle and determined it was registered to Kaplon's mother's home. Officer Carmine DeCaro, aware that other vehicles had recently been stolen in the area, headed to the home to investigate if the car was stolen or if anyone was injured. The only pedestrian

---

[1] Because we are reviewing a summary judgment ruling, we recite the facts viewed in the light most favorable to the nonmovant, Kaplon. Burns v. Pa. Dep't of Corr., 642 F.3d 163, 170 (3d Cir. 2011). However, the existence of body worn camera videos provides "an added wrinkle" to our review. Scott v. Harris, 550 U.S. 372, 378 (2007). Where those videos "blatantly contradict[]" Kaplon's account such that "no reasonable jury could believe it," we decline to adopt his version of events. Id. at 380.

The Defendants have also pointed to the officers' deposition testimony recounting the arrest. Because the Defendants came forward with record evidence, the burden shifted to Kaplon to point to contradictory facts in the record. Fed. R. Civ. P. 56(c), (e); Wiest v. Tyco Elecs. Corp., 812 F.3d 319, 330 (3d Cir. 2016) ("[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party who must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." (quotation marks omitted)); see also Doeblers' Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812, n.8 (3d Cir. 2006) ("Judges are not like pigs, hunting for truffles buried in the record." (quotation marks omitted)). He failed to do so. Thus, even if parts of the video evidence are unclear, the relevant parts of the officers' accounts of that night remain unrebutted and may be deemed undisputed. Fed. R. Civ. P. 56(e).

2

Officer DeCaro happened upon while he traveled from the crash site to the owner's home was Kaplon, who he saw standing behind a large sign with only his legs visible

Wearing his uniform, Officer DeCaro exited his marked police car and approached Kaplon, whistled, and called out "Yo." App. 850 (0:25-0:35). Kaplon began walking away at a brisk pace, and Officer DeCaro followed. App. 850 (0:35-1:00), 851 (0:50-1:19). Kaplon began to run, and Officer DeCaro pursued, calling out "Yo" multiple times. App. 405-06, 850 (1:05-1:25). Officer DeCaro caught up to Kaplon and grabbed his shoulder, and the two fell to the ground. While on his back, Kaplon shouted and swung his right fist at Officer DeCaro.

At this time, Officer Kojo Yeboah arrived. Officer Yeboah had observed Kaplon fleeing from Officer DeCaro and swinging at him. Officer Yeboah got on top of Kaplon, allowing Officer DeCaro to leave the area. Kaplon continued swinging his arms and attempted to kick Officer Yeboah while Officer Yeboah tried to turn Kaplon onto his stomach. At some point in his attempt to restrain Kaplon, Officer Yeboah pressed his knee onto Kaplon's back.

Sergeant Clay Boeninghaus heard Officer Yeboah's struggle with Kaplon over the radio and responded to the scene. Observing that Kaplon was now turned face-down and concerned he was holding a weapon in his hands beneath him, Sergeant Boeninghaus repeatedly shouted for Kaplon to "give me your hands" and instructed him to "stop resisting." App. 845. After Kaplon refused to comply, Sergeant Boeninghaus punched him three times in the back with a closed fist so that he would release his hands. Kaplon

3

finally did so and was placed into handcuffs. Sergeant Boeninghaus testified he did not strike Kaplon "with all [his] power" and instead "employed a lower level of force . . . with the intent to gain control of [Kaplon]." App. 706.

B

Kaplon pled guilty to driving under the influence and failing to report a motor vehicle accident. Thereafter, he filed this complaint against various defendants alleging constitutional violations through 42 U.S.C. § 1983 as well as claims under the New Jersey Civil Rights Act (NJCRA) and state tort law.[2] Relevant here, Kaplon alleged that (1) Officer DeCaro unlawfully seized him, and (2) Officer Yeboah and Sergeant Boeninghaus used excessive force in effecting his arrest.[3] He also claimed that their respective supervisors, police departments, and municipalities were liable under Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978), "by virtue of their training, supervision, policies, procedures, and/or directives." App. 43-51.

Following discovery, all parties moved for summary judgment. The District Court granted Defendants' motions and denied Kaplon's, Kaplon v. Madison Police Dep't, No. CV 20-20559, 2025 WL 892884 (D.N.J. Mar. 24, 2025, holding his claims failed because (1) Office DeCaro's stop was supported by reasonable suspicion because Kaplon exhibited evasive behavior and "first fled from the scene of a crime and then fled from

---

[2] Kaplon also initially alleged false arrest and false imprisonment against all Defendants, but those claims were voluntarily dismissed.

[3] Kaplon also alleged violations by Officer Caleb Hough but later admitted that Officer Hough never used physical force against him.

[him]," id. at *5-6, and (2) Officer Yeboah's and Sergeant Boeninghaus's uses of force were reasonable because "[d]espite clear directives to stop resisting, [Kaplon] continued to resist and bury his arms beneath him," id. at *8.[4]

Kaplon appeals.

## II[5]

## A

We first examine whether Officer DeCaro's seizure of Kaplon was justified by "reasonable, articulable suspicion that criminal activity [was] afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). "Reasonable suspicion . . . demands that 'the detaining officers must have a particularized

---

[4] The District Court further concluded that, even if Kaplon had established a constitutional violation, his claims would be barred by qualified immunity because the officers had not violated any "clearly established" law. Kaplon, 2025 WL 892884, at *10. Moreover, because the District Court found that no employees were liable, it held that Kaplon's claims against the officers' supervisors and employers failed. Id. at *9 (citing Williams v. Borough of West Chester, 891 F.2d 458, 467 (3d Cir. 1989)). It also found that that Kaplon "fail[ed] to present any evidence of an alleged policy or custom that contributed to the alleged constitutional violations." Id. The District Court further determined that the New Jersey Tort Claims Act barred Kaplon's state-law tort claims. Id. at *10-11.

[5] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367, and we have jurisdiction under 28 U.S.C. § 1291. We review the District Court's order granting summary judgment de novo. Ellis v. Westinghouse Elec. Co., 11 F.4th 221, 229 (3d Cir. 2021). "When we review the District Court's grant of summary judgment, we will reverse only . . . when we conclude that material facts are in dispute, or when we determine that the undisputed facts—viewed in a light most favorable to the non-moving party—could objectively support a jury's verdict in favor of the non-moving party." Andrews v. Scuilli, 853 F.3d 690, 696 (3d Cir. 2017).

and objective basis for suspecting the particular person stopped of criminal activity.'" United States v. Brown, 448 F.3d 239, 246 (3d Cir. 2006) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)). This determination is based on a consideration of the totality of the circumstances, including an officer's "investigative inferences" or "personal observation[s] of suspicions behavior." United States v. Nelson, 284 F.3d 472, 478 (3d Cir. 2002).

Reasonable suspicion supported Officer DeCaro's seizure of Kaplon as a suspect of either a possible motor vehicle theft or leaving the scene of an accident in violation of N.J. Stat. Ann § 39:4-129. First, Officer DeCaro encountered Kaplon alone in the predawn hours while investigating an abandoned, crashed, and possibly stolen car in an area where he knew prior car thefts had occurred. Second, Officer DeCaro observed Kaplon hiding behind a sign and then walking away as he approached and called out. Wardlow, 528 U.S. at 124 ("[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion."); see also United States v. Valentine, 232 F.3d 350, 357 (3d Cir. 2000) (determining reasonable suspicion existed where, inter alia, individuals were "in a high-crime area at 1:00am" and "walk[ed] away as soon as they noticed" police officers). Third, Kaplon ran away from Officer DeCaro, which the Supreme Court has recognized to be "the consummate act of evasion." Wardlow, 528 U.S. at 124; United States v. Brown, 159 F.3d 147, 149 (3d Cir. 1998) ("[F]light

6

combined with other factors may support a warrantless stop and frisk.").[6] These

circumstances provided Officer DeCaro reasonable suspicion to stop and seize Kaplon, so

the seizure was lawful. Furthermore, Kaplon fails to explain why, in these

circumstances, Officer DeCaro's conduct exceeded his right to use force to effectuate this

valid stop. See United States v. Bonner, 363 F.3d 213, 217-18 (3d Cir. 2004).[7]

B

There is no dispute that Officer Yeboah and Sergeant Boeninghaus used force to

effect Kaplon's seizure, so we need only determine whether a reasonable jury could

conclude that the force was excessive. See Groman v. Twp. of Manalapan, 47 F.3d 628,

634 (3d Cir. 1995) ("Police officers are privileged to commit a battery pursuant to a

lawful arrest, but the privilege is negated by the use of excessive force.").

To show excessive force, "a plaintiff must show that a seizure occurred and that it

was unreasonable under the circumstances." Lamont v. New Jersey, 637 F.3d 177, 182-

83 (3d Cir. 2011). When evaluating such a claim, we therefore pay "careful attention to

the facts and circumstances of each particular case, including the severity of the crime at

issue, whether the suspect poses an immediate threat to the safety of the officers or

---

[6] Although Officer DeCaro did not announce himself as a police officer, he arrived at the scene in a marked police car wearing a police uniform. See United States v. Bonner, 363 F.3d 213, 215 (3d Cir. 2004) (recognizing that flight from uniformed officers supports reasonable suspicion).

[7] See also Graham v. Connor, 490 U.S. 386, 396 (1989) ("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").

others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

Graham v. Connor, 490 U.S. 386, 396 (1989). We also consider

> the physical injury to the plaintiff, the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

Rush v. City of Philadelphia, 78 F.4th 610, 620 (3d Cir. 2023) (quotation marks omitted). We engage in this analysis "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and acknowledge that law enforcement officers "are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97.

We agree with the District Court that no reasonable fact-finder could conclude that Officer Yeboah used excessive force to subdue Kaplon because (1) he observed Kaplon fleeing from and attempting to strike Officer DeCaro, and (2) Kaplon resisted arrest by punching and kicking Officer Yeboah. See id. at 396 (holding that courts must consider "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight").

The same is true for Sergeant Boeninghaus. Because he (1) was aware that Kaplon had attempted to strike Officer Yeboah as he tried to subdue him, (2) feared that Kaplon was concealing a weapon by hiding his hands beneath his body, (3) ordered Kaplon multiple times without success to show his hands, (4) punched Kaplon's back

8

with "a lower level of force . . . with the intent to gain control" of his hands, App. 706, and (5) warned him before delivering the blows, no reasonable fact-finder could find this use of force was unreasonable.

Therefore, the District Court correctly granted summary judgment for Defendants on Kaplon's § 1983 and New Jersey Civil Rights Act claims.[8]  See Falcone v. Dickstein, 92 F.4th 193, 205 n.8 (3d Cir. 2024) ("Because the NJCRA is interpreted analogously to § 1983, our analysis applies equally to that statute."), cert. denied sub nom. Murray-Nolan v. Rubin, 144 S. Ct. 2560 (2024).

C

Kaplon's state-law tort claims also fail.  First, New Jersey law provides immunity to officers involved in police pursuits as occurred here.  See N.J. Stat. Ann. § 59:5-2(b)-(c) (providing immunity for "any injury caused by . . . a person resisting or evading arrest . . . [or] resulting from or caused by law enforcement's pursuit of a person").  Second, while New Jersey law does not extend immunity to "willful misconduct," N.J. Stat. Ann. § 59:3-14, Kaplon failed to establish such misconduct occurred because he did not make "a showing that there has been a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences." Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1113 (N.J. 2009) (quoting Berg v. Reaction

---

[8] Kaplon's Monell claims also fail because he did not establish that any officer committed a constitutional violation.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam); Brown v. Pa., Dep't of Health Emergency Med. Servs. Training Inst., 318 F.3d 473, 482 (3d Cir. 2003).

Motors Div., Thiokol Chem. Corp., 181 A.2d 487, 496 (N.J. 1962).[9]  Third, Kaplon's

intentional infliction of emotional distress claim fails because he predicates this claim on

the use of excessive force, and he failed to show that excessive force was used here.

III

For the foregoing reasons, we will affirm.

---

[9] N.J. Stat. Ann. § 59:2-2(b) ("A public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable.").

10